**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RAMON SANTOS, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

        Plaintiff

        v.

SIP NY ACQUISITION LLC,
    d/b/a THE OTTER
    a/d/b/a SLOANE
SIM SOHO MANAGER LLC
    d/b/a THE MANNER HOTEL, and
ALEX STUPAK,

        Defendants.

---

Case No:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**
**Jury Trial Demanded**

Plaintiff RAMON SANTOS ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, SIP NY ACQUISITION LLC d/b/a THE OTTER a/d/b/a SLOANE, SIM SOHO MANAGER LLC d/b/a THE MANNER HOTEL ("Corporate Defendants"), and ALEX STUPAK ("Individual Defendant", and together with Corporate Defendants, "Defendants") and states as follows:

**INTRODUCTION**

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et. seq. ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid tips due to illegally retained gratuities, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiff alleges, pursuant to the New York Labor Law ("NYLL"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid tips due to illegally retained gratuities, (2) unpaid call-in pay premiums, (3) liquidated damages, (4) statutory penalties due to WTPA violations, and (5) attorneys' fees and costs.

3.      Plaintiff further alleges, on an individual basis, that Defendants violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., when they retaliated against Plaintiff when he returned from medical leave. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

**PARTIES**

6.      For all relevant periods, Plaintiff RAMON SANTOS was a resident of New York County.

7.      Corporate Defendant SIP NY ACQUISITION LLC is a foreign limited liability company organized under the laws of the State of Delaware, with a principal place of business

located at 58 Thompson Street, New York, NY 10012 and an address for service of process at 1 Rockefeller Plaza, Suite 1204, New York, NY 10020.

8.　Corporate Defendant SIM SOHO MANAGER LLC is a foreign limited liability company organized under the laws of the State of Delaware, with a principal place of business located at 58 Thompson Street, New York, NY 10012 and an address for service of process at 1 Rockefeller Plaza, Suite 1204, New York, NY 10020.

9.　Together with the Individual Defendant, the Corporate Defendants operate two restaurants, The Otter and Sloane (the "Restaurants"), inside of a hotel, The Manner Hotel (the "Hotel" and together with the Restaurants, the "Venues"). The hotel is owned and operated by Defendant SIM SOHO MANAGER LLC and the restaurants are owned by SIP NY ACQUISITION, LLC, and operated along with SIM SOHO MANAGER LLC. Individual Defendant ALEX STUPAK owns and manages the Restaurants.

10.　Together the Defendants operate the restaurants as a single integrated enterprise:

 a. The Hotel advertises its association with the Restaurants and their presence on its premises and the Restaurants advertise their association with the Hotel.

 b.　The Restaurants are managed by the Hotel's and the Restaurants' managerial staff. Employees are directed by Individual Defendant ALEX STUPAK and are paid by the Hotel. *See* **Exhibit A**, Plaintiff's Paystub.

 c. The liquor licenses provided by the New York State Liquor Authority for the Corporate Defendants list common principals across the Restaurants and the Hotel.

d.  The Venues share employees between the Restaurants and the Hotel, including dishwashers and other staff. They also share supplies and other operational resources.

e.  The Corporate Defendants applied jointly for liquor and operational licenses. *See* **Exhibit B**, Decision and Recommendation of Manhattan Community Board 2.

11.     All Corporate Defendants are appropriately named in this action because the Venues share identical illegal wage and hour policies and are under common ownership, management, and control. The Venues and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the FLSA Collective Plaintiffs and Class Members for whom Plaintiff seeks to represent.

12.     Individual Defendant ALEX STUPAK is a principal of the Restaurants. Individual Defendant ALEX STUPAK exercises operational control as it relates to all Restaurant employees including Plaintiff. Individual Defendant ALEX STUPAK exercises—and also delegates to managers and supervisors—the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff. At all times, employees of Defendants' Venues could complain to Individual Defendant ALEX STUPAK directly regarding any of the terms of their employment, and Individual Defendant ALEX STUPAK would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. Individual Defendant ALEX STUPAK exercises functional control over the business and financial operations of each of the Corporate Defendants.

13.     At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

14.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

15.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

16.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt, tipped employees (including servers, bussers, bartenders, barbacks, runners, food runners, and hostesses, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

17.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages and tips, including unpaid tips due to illegally retained gratuities. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

18.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action,

their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

19.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt, tipped employees (including servers, bussers, bartenders, barbacks, runners, food runners, and hostesses, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

20.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

21.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

22.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' failure to pay all wages and tips, due to (1)

illegally retaining gratuities, (2) failing to pay call-in premiums for shifts lasting less than three hours, (3) failing to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law, and (4) failing to provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures of Defendants.

23.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

24.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great

expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

25.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

26.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

     a.  Whether Defendants employed Plaintiff and the Class within the meaning of the relevant federal and state wage and hour laws;

     b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c.   At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d.   Whether Defendants accurately tracked the amounts of tips and gratuities earned each day and maintained records thereof;

e.   Whether Defendants illegally retained gratuities belonging to Plaintiff and Class Members;

f.   Whether Defendants paid call-in premiums to Plaintiff and Class Members for shifts worked which were less than three hours in length;

g.   Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and

h.   Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law.

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

27.   On or around September 9, 2025, Plaintiff was hired by Defendants to work as a server at Defendants' Restaurants, the Otter and Sloane, both located at 58 Thompson Street, New York, NY 10012. In addition to his duties as a server, Plaintiff also performed duties as a runner, room service, delivery boy, and barback. Plaintiff's employment with Defendants ended on or about February 27, 2026.

28.     Plaintiff's schedule varied greatly. Depending on the week, he would be scheduled for anywhere between one and four days, and scheduled to come in any time between 2:30 p.m. and 5:40 p.m. and would clock out anywhere between 8:00 p.m. and 12:30 a.m., depending on how many customer reservations the Restaurants received.

29.     Throughout his employment, Plaintiff always clocked in and out using Defendants' timekeeping system.

30.     Throughout his employment, Plaintiff was compensated at the prevailing minimum wage, except for private events where he earned $40 per hour. FLSA Collective Plaintiffs and Class Members were paid at similar rates. Defendants never took a tip credit from Plaintiff, FLSA Collective Plaintiffs, and Class Members.

***Illegal Tip Retention at Private Events***

31.     At all relevant times, Defendants required Plaintiff, FLSA Collective Plaintiffs, and Class Members to work private events at the Venues two (2) to four (4) times per week. For these events, Defendants charged customers a flat service charge of 22% as part of their event contract, but retained all of those gratuities for themselves, paying Plaintiff, FLSA Collective Plaintiffs, and Class Members only a flat rate of $40 per hour instead of distributing the gratuities or service charges to the service employees who earned them. Because private hospitality events are regularly tipped, customers reasonably believed the fee to be a gratuity for servers. However, Defendants retained the entire fee and failed to explicitly inform customers that the fee was not a gratuity but was instead retained by Defendants. Defendants' failure to provide such notice violated the requirements of *Sarmiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008), which holds that unless an employer specifically communicates to customers that it retains fees or surcharges, all such monies must be distributed to their wait staff as gratuities.

32.     It is clear that customers did not understand that these fees were not tips. It is typical for customers to tip employees working at private events. Yet despite this custom and despite working dozens of events, customers never tipped Plaintiff for his service. Even if customers were notified that surcharges or service fees were not tips, that notice failed to adequately inform them that the fees covered administrative costs—as evidenced by the fact that no customer ever tipped Plaintiff or other staff.

33.     Due to Defendants' failure to notify customers, the service charge amounts to illegal tip retention under the meaning of § 196-d of the NYLL and FLSA § 203(m).

34.     Accordingly, because Defendants failed to adequately inform customers that they retained the service charge, Plaintiff, FLSA Collective Plaintiffs, and Class Members are entitled to recover the fee as illegally retained tips.

35.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of retaining Plaintiff's, FLSA Collective Plaintiffs', and Class Members' tips, in violation of the FLSA and the NYLL.

***Tip Retention Claim***

36.     Further, throughout Plaintiff's employment, Defendants retained most of the cash tips received by Plaintiff when working non-private events. Specifically, after every shift, Plaintiff was required to remit cash tips to management to be added to Plaintiff's paycheck.

37.     However, Defendants only added a fraction of the cash tips Plaintiff received to his paycheck, instead allowing management to retain the remainder of the cash tips for themselves. Defendants similarly retained FLSA Collective Plaintiffs' and Class Members' tips.

38.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of retaining cash tips rightfully owed to Plaintiff, FLSA Collective Plaintiffs, and Class Members.

*Unpaid Call-In Pay Premiums Claims*

39.     Defendants regularly overscheduled their front-of-house staff. Despite not having enough reservations and foot traffic on many weeknights, Defendants still scheduled full complements of serving, hosting, and bussing staff. As a result, Defendants would frequently cut some of those workers well ahead of their shift's scheduled end times and send them home. At least once per week, Plaintiff would arrive to work and be sent home after only one to two hours. When this happened, Plaintiff did not receive any call-in pay premiums, as mandated by the NYLL.

40.     Plaintiff also witnessed many other Class Members being sent home in similar fashion, without call-in pay.

41.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay call-in premiums to Plaintiff and Class Members for shifts worked which were less than three hours in length.

*Plaintiff's Individual FMLA Retaliation Claims*

42.     In or around August of 2025, Plaintiff required surgery which rendered him temporarily unable to fulfill his duties. Plaintiff therefore applied for and was granted leave under the FMLA. Plaintiff was out on leave until October 2025, during which time he received all appropriate benefits and payments under the FMLA.

43.     However, when Plaintiff returned from leave, instead of being reinstated to his position as a server in the Otter and Sloane, Defendants demoted Plaintiff to a room service

position. Plaintiff's new position offered fewer hours, fewer tips, and involved significantly different duties and responsibilities. When he inquired with management as to why he had not been returned to his position as a restaurant server, Plaintiff was informed that he was being demoted as a consequence of his having taken leave.

44.     Plaintiff complained to HR about this clear retaliation against him for exercising his rights. After about a month of working as a room service employee and complaining, Plaintiff was reinstated to his original position as a restaurant server. However, by that point Plaintiff had already lost a significant amount of income and Defendants made no effort to compensate him for his lost wages.

45.     Defendants knowingly and willfully retaliated against Class members for the exercise of there protected rights, in violation of the FMLA. Other Class members would feel afraid to exercise their rights under the FMLA knowing Defendants would retaliate.

***Claims of WTPA Violations***

46.     At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA"), incorporated into the NYLL.

47.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in Guthrie v. Rainbow Fencing Inc., 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

48.     New York courts continue to find sufficient standing to support these claims.  One such court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

49.     Here, Defendants' conduct has led to exactly the kind of injury contemplated in Guthrie and Sanchez. By failing to inform Plaintiff and Class Members of the actual tips that they earned by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of tips Plaintiff and Class Members actually earned, as required by law, Defendants would have had to either (a) increase the wages to correspond to the tips actually earned or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did not correspond to the tips the employee actually earned.

50.     By failing to report all of Plaintiff's and Class Members' tips, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as

unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

51.     Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' tip retention.  Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiffs and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants' intentional hiding of that information, Plaintiffs and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

52.     Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

53.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

54.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

55.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

56.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

57.    At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

58.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their proper tips, due to Defendants' illegal tip retention policy.

59.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation (including tips) paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

60.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their tips, when Defendants knew or should have known such was due.

61.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

62.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

63.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid gratuities, illegally retained gratuities, and liquidated damages.

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

64.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

65.     At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

66.     Defendants willfully violated Plaintiff's and Class Members' rights by illegally retaining their rightfully earned gratuities from private events and normal shifts.

67.     Defendants willfully violated the Plaintiff's and Class Members' rights by failing to compensate them their owed call-in pay premiums for all shifts worked lasting less than three hours.

68.     Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

69.     Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

70.     Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

71.     Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants: their illegally retained gratuities, liquidated damages, statutory penalties, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law.

## COUNT III

## RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT

72.     The FMLA states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period …. because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S. Code § 2612(a)(1)(D).

73.     The FMLA defines serious health condition as, "an illness, injury, impairment, or physical or mental condition that involves … continuing treatment by a health care provider. 29 U.S. Code § 2611(11).

74.     Section 2615(a) of the FMLA, states in pertinent part:

Interference with rights.

i.   Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

ii.  Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

75.     Defendants are subject to the FMLA as a covered employer. Defendants are a covered employer because they employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar workweeks in the year preceding their violation of

Plaintiff's rights under the FMLA. Defendants have more than fifty (50) employees and therefore meet FMLA standards.

76.     Plaintiff is an eligible employee under the FMLA because he had worked at least 1,250 hours in the 12 months preceding his request for leave.

77.     Defendants interfered with Plaintiff's rights under the FMLA by demoting him because he took time off due to a serious medical condition on the order and recommendation of his doctors.

78.     Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

   a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, FMLA, and the NYLL;

   b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

   c. An award of disgorgement of all improperly retained and distributed tips and gratuities, due under the FLSA and the NYLL;

   d. An award of disgorgement of all improperly distributed tips due to Defendants' invalid tip pool, due under the FLSA and the NYLL;

e. An award of unpaid wages due to Defendants' tip credit violations under the FLSA and the NYLL;

f. An award of unpaid wages, due to Defendants' failure to compensate owed call-in pay premiums, due under the NYLL;

g. An award of backpay, compensatory damages, and punitive damages due under the FMLA;

h. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

i. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

j. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

k. Designation of this action as a collective action pursuant to 29 U.S.C. § 216(b);

l. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

m. Designation of this action as a class action pursuant to F.R.C.P. 23;

n. Designation of Plaintiff as Representative of the Class; and

o. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: July 16, 2026
      New York, New York

Respectfully submitted,


**LEE LITIGATION GROUP, PLLC**


By: /s/ C.K. Lee
C.K. Lee, Esq. (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*